UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALICIA DAWN HUTCHISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:21-CV-211-DCP |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 26]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 19] and Defendant's Motion for Summary Judgment [Doc. 24]. Alicia Dawn Hutchison ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.  PROCEDURAL HISTORY

On April 14, 2019, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on June 9, 2018 [Tr. 223–25]. After her application was denied initially and upon reconsideration, Plaintiff

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

requested a hearing before an ALJ [*Id.* at 223, 224, 268, 269, 293]. A hearing was held on August 11, 2020 [*Id.* at 187–209]. On September 2, 2020, the ALJ found that Plaintiff was not disabled [*Id.* at 168–82]. The Appeals Council denied Plaintiff's request for review on April 6, 2021 [*Id.* at 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 10, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since June 9, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity, anemia, thyroid gland disorder, depression, anxiety, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can lift and/or carry 50 pounds occasionally, 25 pounds frequently. She can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. In terms

of postural limitations, she can never climb ladders, ropes, or scaffolds, and can frequently kneel, crawl, balance, and climb ramps and stairs. There are no manipulative, visual, or communicative limitations. In terms of environmental limitations, she must avoid unprotected heights and moving mechanical parts. In terms of mental limitations, she can tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, and more than occasional changes in work setting; it is further defined as no judgments or decisions with regard to executive, managerial, fiscal, and personnel-related matters. Lastly, she can occasionally interact with the general public; can tolerate occasional interactions with co-workers, but with no tandem or group tasks required; and can tolerate occasional supervision.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 27, 1987, and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 9, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 174–82].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation

4

Case 3:21-cv-00211-DCP   Document 27   Filed 09/22/22   Page 4 of 14   PageID #: 801

omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his

5

impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his or her physical and mental limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff contends the ALJ's mental RFC finding lacks the support of substantial evidence—and the Commissioner's final decision must therefore be vacated—because the ALJ improperly evaluated the opinion of consultative examiner Ellen Denny, Ph.D. ("Dr. Denny") [Doc 20 pp. 9, 15]. The ALJ's mental RFC finding was as follows:

> [Plaintiff] can tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, teamwork in completing job tasks, and more than occasional changes in work setting; [her mental RFC] is further defined as no judgments or decisions with

6

> regard to executive, managerial, fiscal, and personnel-related matters. Lastly, she can occasionally interact with the general public; can tolerate occasional interactions with co-workers, but with no tandem or group tasks required; and can tolerate occasional supervision.

[Tr. 176]. In reaching this conclusion, the ALJ noted that he found the opinion of Dr. Denny to be "moderately persuasive; however, to the extent [Dr. Denny] suggested severe limitations in [Plaintiff] adapting to stressors, the undersigned concludes such is not entirely consistent with the evidence overall" [*Id.* at 179]. Plaintiff argues the ALJ erred in finding Dr. Denny's opinion to be only "moderately persuasive" which, in turn, led the ALJ to err in calculating Plaintiff's mental RFC [Doc. 20 p. 9]. For the reasons discussed below, the Court finds the ALJ did not err in determining the persuasiveness of Dr. Denny's opinion and that substantial evidence supports the ALJ's RFC finding.

For claims filed on or after March 27, 2017, the SSA no longer defers or gives controlling weight to any medical opinions, including those from a claimant's medical sources. *Compare* 20 C.F.R. § 404.1520c(a), *with id.* § 404.1527. Rather, the ALJ is to evaluate the persuasiveness of a medical source's opinion using a number of factors, including the "supportability" of the opinion, the "consistency" of the opinion, the medical source's relationship with the claimant, the medical source's specialization, and other non-exclusive factors such as the medical source's familiarity with the SSA's policies and evidentiary requirements. *See id.* § 404.1520c(c). Of these factors, the most important for evaluating the persuasiveness of a medical source's opinion—and the two that the ALJ is required to consider—are supportability and consistency. *See id.* § 404.1520c(c). For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source . . . the more persuasive the [opinion] . . . will be." *Id.* § 404.1520c(c)(1). For the consistency factor, "[t]he more consistent a medical opinion . . . is with

the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion." *Id.* § 404.1520c(c)(2).

In this case, Plaintiff argues that the ALJ improperly evaluated Dr. Denny's opinion because he failed to adequately articulate how he considered the supportability and consistency factors, as required by sections 404.1520c and 416.920c [Doc. 20 p. 11]. Plaintiff argues this case is similar to one recently addressed by this Court where an ALJ fully rejected a medical opinion and, in doing so, stated it was not persuasive because it was inconsistent with the other substantial evidence and was overly restrictive [*Id.* (citing *Fox v. Kijakazi*, No. 3:20-CV-00291-CRW, 2021 WL 4502136, at *5 (E.D. Tenn. Sept. 30, 2021))]. There, the Court held that "[w]ithout the ALJ having noted the specific ways in which he found [the opinion] to conflict with the substantial evidence of record, the Court cannot determine whether the ALJ was entitled to reject those opinions." *Fox*, 2021 WL 4502136, at *5. Plaintiff claims the ALJ in this case made similar conclusory statements and failed to provide any citation to evidence he found to be unsupportive or inconsistent [Doc. 20 p. 11]. After arguing that the ALJ erred by making only conclusory statements, Plaintiff then points to (1) various statements from Dr. Denny's report that she claims support Dr. Denny's ultimate opinion,[2] and (2) other evidence from the record that Plaintiff claims

---

[2]  Plaintiff cites several portions of Dr. Denny's report that she argues support Dr. Denny's ultimate opinion, including Plaintiff's statements to Dr. Denny that: (1) her father physically and sexually abused her until he committed suicide [Doc. 20 p. 11 (citing Tr. 599)]; (2) her cousins also sexually abused her [*Id.*]; (3) prior to July 2017, she was able to work, grocery shop, drive, shop, go to bookstores and go to school, but that her anxiety and depression prevented her from doing those [*Id.* at 11–12 (citing Tr. 600)]; (4) she had flashbacks, nightmares, and hallucinations from the physical and sexual abuse [*Id.* at 12 (citing Tr. 601)]; and (5) she avoids men as a result of her trauma [*Id.*]. Further, Plaintiff notes that Dr. Denny stated in her report that Plaintiff: (6) was observed to have an anxious and depressed mood/affect [*Id.* (citing Tr. 600)]; (7) displayed mild impairment in memory, attention, and concentration [*Id.*]; and (8) had diagnoses of PTSD, persistent depressive disorder, panic disorder, and agoraphobia [*Id.* (citing Tr. 601–02)].

8

is consistent with Dr. Denny's opinion [*Id.* at 11–13].[3]

In response, the Commissioner argues the ALJ properly articulated how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Denny's opinion [Doc. 25 p. 10–12]. The Commissioner adds that while Plaintiff explains how she would have evaluated the persuasiveness of Dr. Denny's opinion differently based on the additional evidence she cites, her mere disagreement with the ALJ's conclusion does not warrant remand because an ALJ has a "zone of choice" within which to act without fear of court interference [*Id.* at 12 (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006))]. The Commissioner argues therefore that the ALJ did not err in evaluating the persuasiveness of Dr. Denny's opinion.

The Court has considered the parties' arguments and finds the ALJ's assessment of Dr. Denny's opinion was proper because the ALJ sufficiently articulated how he considered the supportability and consistency of Dr. Denny's opinion. In his opinion, the ALJ first detailed

---

[3] Plaintiff argues Dr. Denny's opinion is consistent with the statements in Sara Propst, Ph.D.'s ("Dr. Propst") August 13, 2018 Behavioral Health Adult Intake report in which Dr. Propst noted: (1) Plaintiff was diagnosed with anxiety and depression in 2016 following her father's suicide [Doc 20 p. 12 (citing Tr. 559)]; (2) Plaintiff reported a history of self-harming in her late teens [*Id.*]; (3) Plaintiff reported feeling overwhelmed [*Id.*]; (4) Plaintiff's depressive symptoms included anhedonia, deactivation, fatigue, guilt, insomnia, irritability, sadness, and worthlessness [*Id.*]; (5) Plaintiff's anxiety symptoms included avoidance behaviors, concentration difficulties, excessive fear, insomnia, persistent worry, and restlessness [*Id.* at 12–13 (citing Tr. 559)]; (6) her mental status examination revelated depress/anxious mood [*Id.* at 13 (citing Tr. 562)]; and (7) Plaintiff's diagnoses were recurrent major depressive disorder and generalized anxiety disorder [*Id.*]. Additionally, Plaintiff refers to a November 16, 2018 follow up with Dr. Propst in which Plaintiff reported: (8) increased symptoms of depression despite her medication [*Id.* at 13 (citing Tr. 567)]; (9) passive thoughts of being better off dead [*Id.*]; and (10) that she was unable to sleep more than 2-3 hours per night due to her anxiety [*Id.*]. Plaintiff also points to a November 16 follow-up with Dr. Propst in which Dr. Propst again (11) observed Plaintiff to have a depressed and anxious mood [*Id.*]. Finally, Plaintiff notes an August 10, 2020 meeting in which she reported (1) experiencing a nightmare that caused her heightened anxiety involving her abusive father and not being able to escape [*Id.* (citing Tr. 9)]. Plaintiff argues that all of this evidence is consistent with Dr. Denny's opinion and that by not relying on, the ALJ erred [*Id.*].

Plaintiff's mental health history:

> As for the claimant's mental health impairments, treatment records document that the claimant presented in August 2018 to reestablish care with a mental health professional. She reported depression and anxiety and stated she was overwhelmed by being a single mom with three children. She also noted her son has behavioral/mental health problems that are stressful for her. The claimant's mental status exam was remarkable for depression and anxiety as well as fair impulse control, insight, and judgment; otherwise, she had normal concentration, memory, and thought processes. Such mental status examination continued through July 2019, which demonstrates that the claimant has some moderate symptoms that are stable throughout treatment. The claimant reported restless leg syndrome and hallucinations at bedtime in October 2019; however, her mental status examination was unremarkable for any thought disorder or perceptual abnormalities. She noted significant depressive and anxiety symptoms in December 2019 and January 20202; however, she also reported that her medication was helpful in managing her symptoms. Aside from limited motivation/energy, anxiety, and flat affect, she had a normal mental status examination. Claimant reported a history of sexual and physical abuse that prompted a diagnosis of PTSD; however, she did not report significant symptoms associated with this condition. In any event, the undersigned gave the claimant the benefit of all doubt in finding PTSD is a severe impairment in combination with her depression and anxiety.

[Tr. 178 (citations omitted)]. The ALJ then went on to assess Dr. Denny's opinion,

> Results of the consultative psychological evaluation conducted in October 2019 are consistent with her intermittent mental health treatment. The evaluation revealed no more than mild deficits in short-term memory and concentration. The claimant's reported symptoms and subjective complaints prompted diagnoses of PTSD, persistent depressive disorder with psychotic features, panic disorder, and agoraphobia; however, the claimant's mental treatment does not support a diagnosis of panic disorder or agoraphobia. In any case, the evaluator suggested no more than mild limitations in cognitive and attention and moderate limitations in interacting with others. The evaluator suggested severe limitations in adapting and managing but this appears to be based solely on the reported diagnoses, which are not entirely consistent with the treatment records in evidence.

[*Id.* at 178–79]. Finally, the ALJ held that the "opinions of [Dr. Denny's] consultative psychological evaluation are moderately persuasive; however, to the extent that the evaluator suggested severe limitations in adapting to stressors, the undersigned concludes such is not entirely consistent with the evidence overall. The detailed analysis of consistency and support for the

10

opinions is described above." [*Id.* at 179].

The Court finds the ALJ sufficiently articulated his rationale for finding Dr. Denny's opinion to be moderately persuasive based on the supportability and consistency factors. Turning first to the supportability factors, the ALJ stated in his findings that "[Dr. Denny] suggested severe limitations in adapting and managing but this appears to be based solely on the reported diagnoses,"[4] noting the diagnoses were prompted by Plaintiff's reported symptoms and subjective complaints. [*Id.* at 178–79]. The fact that a medical source's opinion is based primarily on a claimant's subjective complaints and reported symptoms is an adequate basis for discounting the supportability of the opinion. *See Owens v. Comm'r of Soc. Sec.*, No. 3:20-CV-01737, 2021 WL 8342841, at *6 (N.D. Ohio Sept. 15, 2021) ("The ALJ was entitled to discredit Dr. Onamusi's opinion for relying on such [subjective] complaints as long as he explained his finding . . . . As such, the ALJ satisfied the requirement of discussing the supportability of Dr. Onamusi's opinion."); *see also Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *9 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted*, 2020 WL 2839654 (N.D. Ohio June 1, 2020) (finding "the ALJ's determination that Dr. Wagner's opinion appeared largely based on [claimant's] subjective reports goes to supportability and consistency" to be an appropriate basis for discounting an opinion). This is particularly true when the claimant's subjective symptoms are also inconsistent with the remainder of the objective medical evidence in the record. *See Owens*, 2021 WL 8342841, at *6 ("Throughout his opinion, the ALJ noted inconsistencies between Claimant's subjective complaints and the objective medical evidence.").

Turning to the consistency of Dr. Denny's opinion to the rest of the record, the ALJ found

---

[4] The ALJ specifies the diagnoses as PTSD, persistent depressive disorder with psychotic features, panic disorder, and agoraphobia. [Tr. 178].

11

Dr. Denny's assessment of mild to moderate limitations consistent with Plaintiff's history of intermittent mental health treatment [Tr. 178, 602, 484–510, 559–62, 567–70, 591–92, 608–13, 622–28, 666–74]. The ALJ considered that, in August 2018, Plaintiff reported depression and anxiety and indicated she was overwhelmed by being a single mother of three children, including one child who had stressful behavioral and mental health issues, yet Plaintiff still showed normal memory and thought processes and had fair impulse control, insight, and judgment [*Id.* at 178, 559, 562]. The ALJ found similar examination findings in the record through July 2019 that indicated Plaintiff had no more than moderate symptoms that were stable with treatment [*Id.* at 178, 495, 502–03, 509, 567–70, 592]. The ALJ noted Plaintiff reported bedtime nightmares and hallucinations in October 2019, but he also noted that a mental status examination at that time was unremarkable for any thought disorder or perceptual abnormalities [*Id.* at 178, 666–67]. In addition, Plaintiff reported symptoms of depression and anxiety in December 2019 and January 2020, but the ALJ found that, other than having limited motivation/energy, anxiety, and a flat affect, Plaintiff's mental status examination findings were normal [*Id.* 178, 608–13, 622–28]. In December 2019, Plaintiff's provider noted she demonstrated good memory, good concentration, and good insight and judgment, and Plaintiff indicated she desired to re-enroll in college to finish her degree [*Id.* 626].

      After reviewing the above and the ALJ's discussion, the Court finds the ALJ sufficiently articulated how he considered the consistency of Dr. Denny's opinion, which he ultimately found to be mixed. Specifically, the ALJ found the results of Dr. Denny's evaluation were consistent with Plaintiff's intermittent mental health treatment and with Dr. Denny's opining that Plaintiff had no more than mild deficits in short-term memory and concentration [*Id.* at 178]. On the other hand, Dr. Denny's panic disorder and agoraphobia diagnoses and opining that Plaintiff had severe

12

limitations in adapting and managing were—for the reasons discussed above—unsupported and not entirely consistent with the treatment records in evidence [*Id.* at 178–79]. Given that, the Court finds the ALJ appropriately discussed the consistency factor.

The Court notes that Plaintiff spends much of her brief explaining how she would have interpreted Dr. Denny's opinion in this case and provides many citations to the record that may very well have supported further limitations [Doc. 20 p. 11–13; *see also supra* n.2, n.3]. The Court finds this argument to be unpersuasive because, while the record may contain evidence of more severe limitations and although Plaintiff would interpret the evidence differently, the ALJ's determination was within his "zone of choice." *Blakley*, 581 F.3d at 407 (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse the ALJ's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).

In sum, the Court finds substantial evidence supports the ALJ's mental RFC determination for Plaintiff. The ALJ did not err in finding Dr. Denny's medical opinion to be only "moderately persuasive" as the ALJ properly relied on the consistency and supportability factors in reaching his determination and there is evidence in the record to support his conclusion. That Plaintiff would have construed the evidence differently and assigned more weight to Dr. Denny's opinion

13

is unconvincing.  Thus, the Court concludes Plaintiff has not presented a valid cause for remand.

VI.     **CONCLUSION**

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 24**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

14

Case 3:21-cv-00211-DCP   Document 27   Filed 09/22/22   Page 14 of 14   PageID #: 811